IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

RANDALL T. McARTY                      PETITIONER

V.                    No. 14-6105

WENDY KELLY, Director
Arkansas Department of Correction             RESPONDENT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the court is the Petitioner's Motion to Vacate, Set Aside, or Correct a Sentence Pursuant to 28 U.S.C. §2254 (ECF No. 1) filed September 12, 2014. The Defendant filed a Response (ECF No. 8) on October 30, 2014. The Petitioner filed an Amended Motion (ECF No. 17) on February 2, 2015 and the Defendant filed a Response (ECF No. 20) on March 16, 2015. The Petitioner filed his Reply (ECF No. 21) on March 27, 2015. The Petitioner then filed a Motion for Summary Judgment (ECF No. 24) on June 8, 2015 and the Respondent filed a Response (ECF No. 27) on June 22, 2015.

The case was reassigned to the undersigned on August 5, 2015 by text order and the case is now ready for disposition.

### I. Background:

Randal McArty is serving a life sentence in the Arkansas Department of Correction as a result of his conviction in 1993 for first-degree murder in case 1992-111 from Clark County.[1] McArty received a prison disciplinary on June 3, 2014, for Unauthorized Use of State Property (Rule 7-1) and Failure to Obey Order of Staff (Rule 12-1) (ECF No. 8-1, p. 1 and p. 9).

---

[1] See http://adc.arkansas.gov/inmate

A hearing was conducted on June 5, 2014 (Id.) and the Petitioner, who was working in the Dental Office, was found guilty of ordering 36 toothbrushes for his own benefit on the account of the ADC. He was sentenced to 15 days of punitive isolation and his GT Class was reduced to Class IV. (Id., p. 2). It appears that the Petitioner appealed the disciplinary ruling on June 5, 2014 but it was affirmed on June 10, 2014. (Id., p. 5).

McArty challenges the disciplinary determination and sentence apparently disputing the sufficiency of the proof on the disciplinary charges and contending that he was denied due process because the Arkansas Department of Correction administrative staff purportedly withheld material evidence that would have proven his innocence. (ECF No. 1 at 5-7).

## II.  Discussion

Section 2254 of Title 28 of the U.S. Code permits a prisoner in state custody, pursuant to the judgment of a State court, to petition a federal court for a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U. S .C. § 2254(a) (2000).

**A.  15 Day Disciplinary Action:**

The petitioner was convicted of Murder in the First Degree in 1993 and sentenced to Life in prison. The Petitioner is not contesting the life sentence but is contesting a 15 day disciplinary action he received and seems to be arguing that the Arkansas Department of Correction did not follow its procedural rules.

The Due Process Clause does not federalize state-law procedural requirements. *Kennedy v. Blankenship* 100 F.3d 640, 643 (C.A.8 (Ark.),1996).

Kennedy v. Blankenship was not a Habeas case but was a case under 42 U.S.C. §1983.

That case, like here, delt with disciplinary action by the ADC and the court stated that:

> "Sandin and our subsequent cases lead us to the conclusion that Kennedy's demotion from administrative segregation to punitive isolation is not the sort of deprivation that qualifies as "atypical and significant." "Nevertheless, Kennedy's punishment is comparable to other deprivations we have upheld in post- Sandin cases. *See Wycoff v. Nichols*, 94 F.3d 1187, 1188 (8th Cir.1996) (10 days of disciplinary detention and 100 days in maximum security cell); *Callender v. Sioux City Residential Treatment Facility*, 88 F.3d 666, 669 (8th Cir.1996) (revocation of work release and return to prison); *Moorman v. Thalacker*, 83 F.3d 970, 971 (8th Cir.1996) (transfer from minimum- to medium-security prison, 15 days of highest-level disciplinary detention, and 107 days of less-restrictive disciplinary *643 detention). Considering all the circumstances, we conclude that Kennedy's transfer from administrative segregation to punitive isolation was not "a dramatic departure from the basic conditions" of his confinement and thus does not constitute "the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Sandin*, 515 U.S. at ----, 115 S.Ct. at 2301."

The court went on to state that:

> "If Kennedy has a liberty interest, it is an interest in the nature of his confinement, not an interest in the procedures by which the state believes it can best determine how he should be confined. *See Olim v. Wakinekona*, 461 U.S. 238, 250, 103 S.Ct. 1741, 1748, 75 L.Ed.2d 813 (1983) ("Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement."); *Griffin-El v. Delo*, 34 F.3d 602, 604 n. 3 (8th Cir.1994) (inmate does not have a liberty interest in a particular procedure). The Due Process Clause of the Fourteenth Amendment, not state law, governs the procedures which the state must follow in depriving Kennedy of a substantive liberty interest 445 U.S. 480, 491, 100 S.Ct. 1254, 1262-63, 63 L.Ed.2d 552 (1980); *Brown v. Frey*, 889 F.2d 159, 166 (8th Cir.1989) ("[T]he court's inquiry is not whether the [state] statute and therefore the Constitution is violated but whether the process afforded plaintiff 'satisfied the minimum requirements of the Due Process Clause.' ") (quoting *Hewitt*, 459 U.S. at 472, 103 S.Ct. at 871-72), cert.

denied, 493 U.S. 1088, 110 S.Ct. 1156, 107 L.Ed.2d 1059 (1990)."

The record of the disciplinary proceedings demonstrates that McArty received all of the process he was due. McArty received written notice of the disciplinary on June 4,2014. The disciplinary hearing took place on June 5, 2014. See Resp.'s Ex. 1, at 9. The hearing record indicated that McArty ordered personal items through the medical/ dental facility at the prison and that he was not authorized to do so. McArty claimed that personnel knew he was ordering personal items, but there is no indication that this in any way made those purchases authorized. See Resp.'s Ex. 1, at 11. The hearing record recites the factual basis for the decision and shows that McArty was advised of his right to appeal the decision. Id. The hearing procedure adequately met Wolff's requirements, and did not deny McArty due process of law.

### B. Reclassification:

The Petitioner also seems to argue that he was denied Due Process because his classification was reduced and as a result he could not earn good time credit during the time he was in punitive isolation and that he "remained at the lowest Class IV level another sixty (60) days after being release from punitive isolation" and was not eligible for good time credit. He also contends that it took him some time to return to Class IC and that he did not earn the same good time credit during Class III and II as he did at Class I. (ECF No. 17, p. 5).

The Arkansas Statutes provides that "An inmate who maintains class through good behavior, good discipline, work practices, job responsibilities, and involvement in rehabilitative activities may earn up to one (1) day for every day served as a reduction toward his or her transfer eligibility date for each day incarcerated after the imposition of sentence." A.C.A. §

12-29-202(b)(1).  The statute also provides that "An inmate who is reduced to the lowest class, established through board policy, as a result of disciplinary action shall not be entitled to earn meritorious good time." (Id.).

The statue also provides that "An inmate may be reclassified as often as the committee deems necessary or in accordance with current board regulations to carry out the purpose of this subchapter and to maintain good discipline, order, and efficiency at the units, facilities, or centers."  (Id.)

The Arkansas Supreme Court has stated that:

> "Arkansas law commits prisoner classification to the discretion of prison officials and does not protect an inmate's right to any particular classification or raise due-process concerns. Ark.Code Ann. § 12–29–202(a)(3), (c); see also *Strickland v. Dyer*, 628 F.Supp. 180 (E.D.Ark.1986). We have held prisoners to have no liberty interest in meritorious good time. *McKinnon*, 366 Ark. 404, 231 S.W.3d 725. Even a loss of class status and privileges that impacts meritorious good time does not compromise a liberty interest. *Munson*, 375 Ark. at 552, 294 S.W.3d at 411. It stands to reason that, if there is no liberty interest in a prisoner's classification or in the meritorious good time that a prisoner might accrue by virtue of that classification, there is certainly no liberty interest merely in being housed with or employed alongside other prisoners of similar classifications." See *Crawford  v. Cashion*  2010 Ark. 124, 7 (Ark.,2010)

The United States Supreme Court stated in reference to federal prisons that prisoner classification was delegated by Congress to the discretion of prison officials and thus implicates "no legitimate statutory or constitutional entitlement sufficient to invoke due process." *Moody v. Daggett*, 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 279 n. 9, 50 L.Ed.2d 236 (1976)

**C.  Meritorious Good Time:**

The substance of the Petitioner's claim is focused on the argument that he has lost

meritorious good time credit as a result of the disciplinary action by the Arkansas Department of Correction.

The Arkansas statutes provide that an "inmate **may** be entitled to meritorious good time reducing his or her transfer eligibility date up to thirty (30) days for each month incarcerated after imposition of sentence in one (1) of the units, facilities, and centers maintained by the Department of Correction or the Department of Community Correction."  A.C.A. § 12-29-2 01

The Petitioner was sentenced to a life sentence and as a result does not have a parole date or a transfer eligibility date from the Arkansas Department of Correction. [2]  See *Hale v. Hobbs*, 2014 Ark. 405, at 4, quoting *Hobbs v. Turner*, 2014 Ark. 19, at 7, 431 S.W.3d 283,287 ("[g]enerally, in Arkansas, life means life.")

The Arkansas Statute pertaining to Meritorious Good Time provides that "(2) Inmates sentenced to life imprisonment shall not receive meritorious good time calculated on their sentences unless the sentence is commuted to a term of years by executive clemency.  (3) Upon commutation, the inmate shall be eligible to receive meritorious good time at the rate established by this subchapter.  A.C.A. § 12-29-201.

The Petitioner's sentence has not been commuted to a term of years by executive clemency and there is no indication that it will be commuted.  "Collateral review of a final judgment is not an endeavor to be undertaken lightly. It is not warranted absent a showing that the complainant suffers actual harm from the judgment that he seeks to avoid." *Lane v. Williams*, 455 U.S. at 633 n. 13, 102 S.Ct. at 1328 n. 13.  Absent a reasonable expectation that the Petitioner's sentence would be commuted by executive clemency the case is moot.  *See Beachem*

---

[2] (See http://adc.arkansas.gov/inmate)

*v. Schriro* 141 F.3d 1292, 1294 (C.A.8 (Mo.),1998) citing *Murphy v. Hunt,* 455 U.S. 478, 482, 102 S.Ct. 1181, 1183–84, 71 L.Ed.2d 353 (1982) (per curiam).  "[E]ither a low probability or doubt about the context of future disputation requires a court to dismiss the case." *D.S.A. v. Circuit Court Branch* 1, 942 F.2d 1143, 1154 (7th Cir.1991).

### III.  Conclusion

Based on the above, I recommend that the instant petition be DISMISSED with PREJUDICE and, for the reasons stated above, that the Petitioner's Motion for Summary Judgment (ECF No. 24) be DENIED.

**The parties have fourteen days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED September 1, 2015.

*/s/ J. Marschewski*
HON. JAMES R. MARSCHEWSKI
U. S. MAGISTRATE JUDGE